UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                                        OPINION AND ORDER
                                                            :           11 Civ. 09150 (KBF) (GWG)

In re: GLG LIFE TECH CORPORATION
SECURITIES LITIGATION                                       :

                                                            :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**


APPEARANCES OF COUNSEL:



For Lead Plaintiffs:

Richard W. Gonnello
Francis P. McConville
Emily C. Komlossy
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017

For GLG Life Tech Corporation:

Keara Gordon
Timothy Birnbaum
DLA Piper LLP
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104

Andrew Escobar
DLA Piper LLP
701 Fifth Avenue, Suite 7000
Seattle, WA 98104

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                          :

                                          :           OPINION AND ORDER

                                          :           11 Civ. 09150 (KBF) (GWG)

In re: GLG LIFE TECH CORPORATION
SECURITIES LITIGATION                 :

                                          :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs in this matter have filed a complaint alleging that the defendants – GLG Life

Tech Corporation ("GLG"), Luke Zhang, and Brian R. Meadows – violated federal securities

laws.  The plaintiffs successfully served GLG and Meadows, both of whom have appeared by

counsel and responded to the complaint.  The plaintiffs now move for leave to serve Zhang by

alternative means pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure.  For the

reasons stated below, this motion is granted.

I.      BACKGROUND

Defendant Zhang is the Chairman and Chief Executive Officer of GLG and is a citizen of

Canada.[1]  Defendant Meadows is the Chief Financial Officer of GLG.[2]  GLG was served on

February 17, 2012, through its registered agent in the United States.[3]  Meadows was served at

---

[1] See Schedule 13D, dated Aug. 8, 2012 (annexed as Ex. C to Declaration of Andrew R. Escobar in Support of Defendant GLG Life Tech Corporation's Opposition to Lead Plaintiffs' Motion for Leave to Serve Process on Defendant Luke Zhang by Alternative Means, filed Aug. 27, 2012 (Docket # 44)), at 3; Consolidated Securities Class Action Complaint, filed May 10, 2012 (Docket # 27) ("Compl."), ¶ 30.

[2] See Form 6-K, dated June 1, 2012 (annexed as Ex. C to Declaration of Andrew R. Escobar in Support of Defendants GLG Life Tech Corporation and Brian Meadows' Motion to Dismiss, filed June 25, 2012 (Docket # 33)), at 22.

[3] See Affidavit of Service, filed Feb. 17, 2012 (Docket # 12).

GLG's headquarters in Vancouver, Canada, on March 2, 2012, pursuant to the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents, Convention done at

the Hague November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("the Hague Convention"). [4]

On the same day, the process server also attempted to serve Zhang at GLG's

headquarters in Vancouver but was told "that Luke Zhang works permanently in China and has

for years." See Certificate, dated Mar. 2, 2012 (annexed as Ex. B to Gonnello 1st Decl.).

Plaintiffs' counsel then inquired with the process server about serving Zhang in China. See

Gonnello 2d Decl. ¶ 2. The process server stated that Zhang should be served at a residential

address, and informed counsel that finding Zhang's home address in China would cost at least

$5,000, "with no guarantee of success." Id. ¶ 6. Counsel chose to conduct a search by other

means, hoping to "minimize costs to the class." Id. ¶ 8. This search included "(1) Google

searches; (2) Bloomberg law searches; (3) Accurint.com searches; and (4) any other methods

[members of his firm] could think of." Id. Counsel also searched the Securities and Exchange

Commission's EDGAR System, as well as the Canadian Securities Administrator's SEDAR

system. Id.

On March 6, 2012, attorneys from the law firm of DLA Piper filed notices of appearance

on behalf of GLG. On March 9, 2012, plaintiffs' counsel contacted GLG's attorneys by phone

to seek a waiver of service of process from Zhang, and sent them a waiver of service document.

---

[4] See Declaration of Richard W. Gonnello in Support of Lead Plaintiff's Reply Brief in
Support of their Motion for Leave to Serve Process on Defendant Luke Zhang by Alternative
Means, filed Sept. 6, 2012 (Docket # 49) ("Gonnello 2d Decl."), at 2; Request for Service
Abroad of Judicial and Extrajudicial Documents, dated Feb. 20, 2012 (annexed as Ex. A to
Declaration of Richard W. Gonnello in Support of Motion for Leave to Serve Process on
Defendant Luke Zhang by Alternative Means, filed Aug. 9, 2012 (Docket # 42) ("Gonnnello 1st
Decl.")).

See Notice of Lawsuit and Request to Waive Service of Summons, dated Mar. 9, 2012 (annexed

as Ex. C to Gonnello 1st Decl.), at 2.  A signed waiver form was never returned, however.  See

Letter from Richard W. Gonnello to Andrew Escobar, dated Apr. 6, 2012 (annexed as Ex. D to

Gonnello 1st Decl.), at 2.  On April 6, 2012, having had no success in his search for Zhang's

residential address, plaintiffs' counsel requested Zhang's residential address from GLG's

attorneys.  See Gonnello 2d Decl. ¶ 9; Letter from Richard W. Gonnello to Andrew Escobar,

dated Apr. 6, 2012 (annexed as Ex. D to Gonnello 1st Decl.).  He received no response.  See

Gonnello 2d Decl. ¶ 9.  On June 25, 2012, GLG and Meadows filed a motion to dismiss.  See

Defendant GLG Life Tech Corporation and Brian Meadows' Notice of Motion to Dismiss, filed

June 25, 2012 (Docket # 31).

On August 9, 2012, Lead Plaintiffs filed the instant motion for leave to serve process on

Zhang by alternative means.[5]  The motion papers suggest three potential methods of alternative

service: (1) service on GLG's counsel; (2) service on GLG's registered agent in Washington; or

(3) service on Zhang by email, assuming the existing stay of discovery is lifted and plaintiffs are

able to obtain Zhang's email address through discovery.  Pl. Mem. at 8–9.

On August 23, 2012, four days before a response to the motion was due, Andrew

Escobar, a lawyer for GLG and Meadows, for the first time offered to provide plaintiffs' counsel

with Zhang's residential address in China.  Gonnello 2d Decl. ¶ 11.  Plaintiffs' counsel declined

this offer.  Id.  When it filed its brief opposing the motion, GLG included the purported address

in the text of its brief.  See Defendant GLG Life Tech Corporation's Memorandum of Law in

---

[5] See Lead Plaintiffs' Motion for Leave to Serve Process on Defendant Luke Zhang by
Alternative Means, filed Aug. 9, 2012 (Docket # 40); Lead Plaintiffs' Opening Brief in Support
of Motion for Leave to Serve Process on Defendant Luke Zhang by Alternative Means, filed
Aug. 9, 2012 (Docket # 41) ("Pl. Mem."); Gonnello 1st Decl.

Opposition to Lead Plaintiffs' Motion for Leave to Serve Process on Defendant Luke Zhang by

Alternative Means, filed Aug. 27, 2012 (Docket # 43) ("Def. Mem."), at 4.  GLG does not state

the source of this address, however.  Additionally, no affidavit has been filed indicating the

source of the address or providing any basis for believing that the address is in fact correct.[6]

II.      DISCUSSION

        A.      GLG's Standing to Oppose the Motion

The papers opposing plaintiffs' motion to serve Zhang by alternative means were not

filed by Zhang but rather by GLG.  Plaintiffs assert that because GLG was properly served, GLG

has no "standing" to oppose the motion as it has not suffered, nor will it suffer, a redressable

injury if the motion is granted.  See Lead Plaintiffs' Reply Memorandum of Law in Support of

their Motion for Leave to Serve Process on Defendant Luke Zhang by Alternative Means, filed

Sept. 6, 2012 (Docket # 48) ("Reply"), at 2–3.

There is case law suggesting that GLG does not have "standing" to oppose this motion.

See Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria, 265 F.R.D. 106, 114–15

(S.D.N.Y. 2010) ("Co-defendants do not have standing to assert improper service claims on

behalf of other defendants."); accord S.E.C. v. Lines, 2009 WL 2431976, at *2 (S.D.N.Y. Aug.

7, 2009).  Indeed, the Second Circuit has stated that "[f]ederal courts as a general rule allow

litigants to assert only their own legal rights and interests, and not the legal rights and interests of

third parties."  Farrell v. Burke, 449 F.3d 470, 494 (2d Cir. 2006).  Nonetheless, this does not

---

      [6] The Court assumes that the attorneys for GLG have accurately transmitted an address that has been provided to them by someone at GLG who purports to have knowledge of the address.  The Court has no basis for determining, however, that the person who provided the address had personal knowledge as to its correctness.  Thus, the record is devoid of evidence as to the address's accuracy.

mean that this Court should "disregard [GLG's motion] . . . in its entirety" as plaintiffs request. Reply at 3. "District courts have broad discretion to permit or deny an appearance as amicus curiae in a case." Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (internal citations omitted). In light of the close connection between GLG and Zhang, the Court will consider GLG's submissions as those of an amicus curiae with respect to plaintiffs' motion because without such consideration, the Court "would be hampered in issuing a ruling grounded on all the facts presented." Madu, 265 F.R.D. at 114.

      B.      Merits

Fed. R. Civ. P. 4(f) governs service of process on individuals "not within any judicial district of the United States." This rule establishes several methods for service on an individual outside of the United States including "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; . . . [and] (3) by other means not prohibited by international agreement, as the court orders." Id. at 4(f)(1), (3). A third method of service, contained in Fed. R. Civ. P. 4(f)(2), governs service in situations where "there is no internationally agreed means" of service or where "an international agreement allows but does not specify other means" of service. Thus, on its face, Fed. R. Civ. P. 4(f) offers a choice between methods of service. Because both China and the United States are signatories to the Hague Convention, see Treaty Affairs Staff, Office of the Legal Adviser, U.S. Dep't of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2011 394–95, subsection (1) of Rule 4(f) is an available method of service on a party residing in China.

"'The decision whether to allow alternative methods of serving process under Rule

4(f)(3) is committed to the sound discretion of the district court.'" Madu, 265 F.R.D. at 115

(quoting RSM Prod. Corp. v. Fridman, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007)).

Courts have repeatedly recognized that "there is no hierarchy among the subsections in Rule

4(f)." Advanced Aerofoil Techs., AG v. Todaro, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31,

2012); accord Swarna v. Al-Awadi, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007).

Accordingly, "court-directed service under Rule 4(f)(3) is as favored as service under Rule

4(f)(1)," Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002), inasmuch as

it is "merely one means among several which enables service of process on an international

defendant." Id. As one court has put it, service under Rule 4(f)(3) is "neither a 'last resort' nor

'extraordinary relief.'" Id.

   Nonetheless, before authorizing service under Rule 4(f)(3), some district courts have

required: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the

defendant, and (2) a showing that the circumstances are such that the court's intervention is

necessary." United States v. Lebanese Canadian Bank SAL, 2012 WL 2035997, at *4 (S.D.N.Y.

June 6, 2012) (citing cases); accord Cold Spring Constr. Co. v. Spikes, 2012 WL 41967, at *2

(W.D.N.Y. Jan. 9, 2012). Imposing such a requirement has been viewed as necessary "in order

to prevent parties from whimsically seeking alternate means of service and thereby increasing

the workload of the courts." Ryan v. Brunswick Corp., 2002 WL 1628933, at *2 (W.D.N.Y.

May 31, 2002). Thus, in cases involving service on a person residing in a country that is a

signatory to the Hague Convention, courts have often imposed a requirement that litigants first

attempt service by means of the Hague Convention before seeking court-ordered alternative

service under section 4(f)(3). See, e.g., Devi v. Rajapaska, 2012 WL 309605, at *2 (S.D.N.Y.

Jan. 31, 2012).

This Court concurs that there will undoubtedly be many instances where significant

efforts to make service under the Hague Convention should be required by a court before

alternative service is ordered.  But nothing in Rule 4(f) itself or controlling case law suggests

that a court must always require a litigant to first exhaust the potential for service under the

Hague Convention before granting an order permitting alternative service under Rule 4(f)(3).

See Wright & Miller, 4B Federal Practice & Procedure: Civil 3d § 1134, at 333 (2002) ("The

only proscription on the district court's discretion is that the method not be prohibited by

international agreement.").[7]

Some courts have held that "principles of comity encourage the court to insist, as a

matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service

of process upon defendant."  C & F Sys., LLC v. Limpimax, S.A., 2010 WL 65200, at *2 (W.D.

Mich. Jan. 6, 2010).  Inasmuch as Rule 4(f)(3) calls upon a court to exercise its discretion,

however, each case must be judged on its facts.  In the present case, it is difficult to see how

principles of comity would be upset if alternative service is ordered on a defendant who is not a

citizen of China and has voluntarily and closely associated himself with a non-Chinese entity

---

[7] The Supreme Court's ruling in Volkswagenwerk Aktiengesellschaft v. Schlunk, 486
U.S. 694 (1988), is not to the contrary.  While Volkswagenwerk noted in dictum that
"compliance with the [Hague] Convention is mandatory in all cases to which it applies," id. at
705, Volkswagenwerk involved an interpretation of Article I of the Hague Convention, which
states that the Convention applies "where there is occasion to transmit a judicial or extrajudicial
document for service abroad."  Hague Convention, art. 1, 20 U.S.T. 361 *1.  Volkswagenwerk
held only that the Hague Convention did not apply where service was made on a foreign
citizen's agent within the United States.  It held that the Convention did not apply because no
judicial document was actually transmitted for service abroad, id. at 707–08, even though it was
obvious that the domestic agent would ultimately transmit the service documents to the
defendant in the foreign country, see id. at 707 ("Whatever internal, private communications
take place between the agent and a foreign principal are beyond the concerns of this case.").
Thus, Volkswagenwerk does not hold or even suggest that the Hague Convention must always
be complied with before alternative service is ordered.

that is already a served co-defendant.

Additionally, the Court is concerned that the length of time required for service under the Hague Convention, approximately six to eight months, see Gonnello 2d. Decl. ¶ 7, may unnecessarily delay this case. Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3). See, e.g., Brown v. China Integrated Energy, Inc., 2012 WL 2913537, at *1, *5 (C.D. Cal. July 17, 2012) (ordering alternative service and noting that service of defendant under the Hague Convention would take four to six months); Ackerman v. Global Vehicles U.S.A., Inc., 2011 WL 3847427, at *3–4 (E.D. Mo. Aug. 26, 2011) (authorizing service on defendant's counsel "so as to not further delay" the lawsuit); The Knit With v. Knitting Fever, Inc., 2010 WL 4977944, at *4–5 (E.D. Pa. Dec. 7, 2010) (plaintiff granted leave to serve a defendant via counsel where Hague Convention service would take up to three months and plaintiff sought a waiver of service from the defendant before seeking leave to serve the defendant by alternative means); LG Elecs., Inc. v. ASKO Appliances, Inc., 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (authorizing service on defendant's counsel "to prevent further delays in litigation").

As noted, two of the methods of service proposed by plaintiffs are (1) service on GLG's counsel; and (2) service on GLG's registered agent in Washington. Use of these methods would not run afoul of the Hague Convention since in both instances no documents would be transmitted abroad. Volkswagenwerk Aktiengesellschaft, 486 U.S. at 703. Moreover, such service comes within the scope of a court's authority under Rule 4(f)(3), since that rule requires only that service be "(1) directed by the court; and (2) not prohibited by international agreement." Rio Props., Inc., 284 F.3d at 1014. In many instances, courts have authorized service under Rule 4(f)(3) on an unserved party's counsel. See, e.g., Brown, 2012 WL 2913537,

8

at \*4–5; Arista Records LLC v. Media Servs. LLC, 2008 WL 563470, at \*1–2 (S.D.N.Y. Feb.

25, 2008); RSM, 2007 WL 2295907, at \*1–3; Ehrenfeld v. Salim a Bin Mahfouz, 2005 WL

696769, at \*3 (S.D.N.Y. Mar. 23, 2005).

Of course, a party seeking leave to serve an individual by counsel must show adequate

communication between the individual and the attorney.  Compare Prediction Co. LLC v.

Rajgarhia, 2010 WL 1050307, at \*2 (S.D.N.Y. Mar. 22, 2010) (finding adequate communication

between defendant and his counsel when the parties had "been in recent contact"), with Madu,

265 F.R.D. at 116 (citing the "absence of communication" between a firm and two unserved

parties when denying plaintiff's request for leave to serve process on counsel).  The

circumstances of this case make clear that service on counsel for GLG is virtually guaranteed to

provide notice to Zhang.  Most obviously, Zhang is the Chairman and Chief Executive Officer of

GLG and it is impossible to imagine that a corporation's attorney would not advise the

corporation's Chairman and Chief Executive Officer of the fact that service destined for that

officer had been made upon its attorney.  See Brown, 2012 WL 2913537, at \*4 (unserved

officers' and directors' "close connection" with the corporation make it "all but certain" that

directors served through counsel "will receive notice of the suit").  The same is true for service

on GLG itself: obviously a corporation will inform its own Chairman and Chief Executive

Officer of a lawsuit pending against him.

As already noted, courts have held that parties should be dissuaded from "whimsically"

seeking alternative service under Rule 4(f)(3).  Brunswick, 2002 WL 1628933, at \*2.  But the

request here is far from whimsical and was occasioned to some degree by the recalcitrance of the

company of which Zhang is CEO and whose actions he presumably controls.  As previously

discussed, the attorneys for the corporation for which Zhang is the Chief Executive Officer

withheld his service address from plaintiffs for many months, Gonnello 2d Decl. ¶¶ 9–11,

releasing what purports to be his address – and for which no competent supporting evidence has

been provided – only after plaintiffs had gone through the expense of filing the instant motion.[8]

Given the certainty that service on GLG's attorneys and/or GLG will result in notice to Zhang,

and given that service via the Hague Convention would be a pointless and lengthy exercise, an

order of alternative service is justified.

     All that remains is to determine if the method of service passes constitutional muster

inasmuch as a proposed means of service "[e]ven if facially permitted by Rule 4(f)(3) . . . must

also comport with constitutional notions of due process," Rio Props., Inc., 284 F.3d at 1016.

Due process requires that the method of service "provide[] notice reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections." Volkswagenwerk Aktiengesellschaft, 486 U.S. at

705 (internal citations omitted); accord Luessenhop v. Clinton Cnty, N.Y., 466 F.3d 259, 269 (2d

Cir. 2006) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950)); RSM,

2007 WL 2295907, at *4. As already discussed, service on counsel and GLG is certain to

apprise Zhang of the pendency of this action.

III.    CONCLUSION

     For the foregoing reasons, the motion for leave to serve process by alternative means

(Docket # 40) is granted. Pursuant to Fed. R. Civ. P. 4(f)(3), plaintiffs are authorized to serve

Zhang by (1) serving counsel for GLG, in accordance with Fed. R. Civ. P. 5(b), with the

---

[8] While GLG argues that Zhang's address was easily accessible from GLG's filings with the Securities and Exchange Commission, they now give a different address at which service should be made and fail to explain why the addresses differ from the addresses in the SEC filings or why service on the newly revealed address is preferable. Def. Mem. at 4.

summons, complaint, and this Opinion and Order ("the service documents"); and (2) serving the

registered domestic agent of GLG with the same papers.

      SO ORDERED.

Dated:  November 9, 2012
         New York, New York

 

                            _____
                            GABRIEL W. GORENSTEIN
                            United States Magistrate Judge

summons, complaint, and this Opinion and Order ("the service documents"); and (2) serving the

registered domestic agent of GLG with the same papers.

SO ORDERED.

Dated: November 9, 2012
      New York, New York

                                 GABRIEL W. GORENSTEIN
                                 United States Magistrate Judge